# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

SANDY KNIGHT,

    Plaintiff,

v.                                  CV 215-166

BEALL'S OUTLET STORES, INC.,

    Defendant.

## ORDER

Pending before the Court is Defendant Beall's Outlet Stores, Inc.'s ("Defendant") Motion for Summary Judgment. Dkt. No. 26. The Motion has been fully briefed and is now ripe for the Court's review. For the reasons set forth below, Defendant's Motion for Summary Judgment (Dkt. No. 26) is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Defendant is a corporation with multiple retail stores located throughout Georgia and the United States. Dkt. No. 1 ¶ 2. Plaintiff Sandy Knight ("Plaintiff") was employed by Defendant from March 2009 through March 2015. Id. ¶¶ 4-5. Plaintiff asserts that she routinely worked over 47 hours a week and was not paid overtime. Dkt. No. 30-2 ¶ 10. Specifically,

Plaintiff alleges that she "should have been paid the regular hourly rate for all [overtime] hours plus an overtime premium of one-half of the hourly rate for each hour worked in excess of forty hours in any given week." Id. Plaintiff primarily worked for Defendant in two locations—Jesup, Georgia and Hinesville, Georgia. Dkt. No. 30 p.3. Plaintiff sometimes worked out of state as well. Id.

During the last three years of Plaintiff's employment she was a "manager" and thus was paid on a salary basis. Dkt. No. 30. p. 2. Part of her job included interviewing, hiring and training new sales associates. Id. p. 3. Plaintiff directed, planned and determined how work was to be done in the store. Dkt. No. 30. p. 3. Plaintiff could discipline employees and apportion work. Id. at 4. However, Plaintiff asserts that 95 percent of her time was spent performing tasks akin to non-managerial employees. Dkt. No. 30-2 ¶ 3. These duties included cleaning, stocking, moving inventory, unloading trucks, and other physical activities. Id. ¶ 10. Plaintiff asserts that she spent a total of 242 days away from the stores she supposedly managed. Id. In contrast, Plaintiff's direct supervisor testifies that she spent only 22 days away from her primary stores during her time working for Defendant. Dkt. No. 32-3 ¶ 8. Plaintiff was ultimately terminated and she now brings this lawsuit. Plaintiff alleges that Defendant's refusal

to pay her overtime wages violates the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et. seq.* ¶¶ 1, 3, 7. Specifically, Plaintiff contends that she is owed "liquidated damages [in] an amount equal to the total amount of unpaid wages and overtime," and that Defendant is responsible for covering her attorney's fees, as authorized by section 216(b) of the FLSA. Dkt. No. 1 ¶¶ 8-10. Second, Plaintiff pleads a breach of contract claim alleging that Defendant failed "to pay [her] for all of her hours worked." Id. ¶ 11.

The Court previously granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's miscellaneous state law claims but allowing Plaintiff's FLSA and state law breach of contract claims to move forward. Dkt No. 8. The Court now turns to Defendant's Motion for Summary Judgment on Plaintiff's FLSA and Breach of Contract claims.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present

3

affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

### I. Plaintiff's FLSA Claims

Defendant moves for summary judgment on Plaintiff's FLSA claims. Defendant argues that Plaintiff is properly classified under multiple exemptions pursuant to the FLSA, and therefore,

Defendants were not required to pay Plaintiff overtime. Dkt. No. 28. p. 3.

The FLSA establishes minimum labor standards to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA is designed to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18 (1945). The FLSA requires employers to pay employees "engaged in commerce or in the production of commerce" overtime when an employee works more than 40 hours in a week. 29 U.S.C. § 207(a)(1). But an exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity," as defined by regulations of the Secretary of Labor. 29 U.S.C. § 213(a)(1). Defendant argues that Plaintiff falls under the executive and administrative exemptions to the FLSA. Dkt. No. 28 p. 3-4. Therefore, the Court considers whether Plaintiff is subject to these exemptions.

In order to meet the executive exemption an employee must: (1) receive compensation on a salary basis at a rate of at least $455 per week; (2) manage the enterprise in which the employee

5

AO 72A
(Rev. 8/82)

is employed as her primary duty; (3) customarily and regularly direct the work of two or more other full-time employees; and (4) have the authority to hire or fire other employees or have particular weight given to their suggestions and recommendations as to the change of status of other employees. 29 C.F.R. § 541.100. Here, the dispute between the parties is whether or not Plaintiff's primary duty was management.

The parties disagree as to whether Plaintiff's primary duty was management during her time as a manager working for Defendant. The Eleventh Circuit has rejected the "categorical approach" in determining whether an employee's primary duty was management. Morgan v. Family Dollar Stores, Inc. 551 F.3d 1233, 1269, 1272 (11th Cir. 2008) (citing Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (2008) (declining to hold that store managers are exempt employees simply because the employee had some managerial responsibility over a business)). Instead, "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Rodriguez, 518 F.3d at 1264; Morgan, 551 F.3d at 1269, 1272; 29 C.F.R. § 541.700(a). Indeed, the exemption should "be applied only to those [employees] clearly and unmistakably within the terms and spirit of the exemption." Morgan, 551 F.3d at 1269 (quoting Brock v. Norman's Country Market, 835 F.2d 823, 826

(11th Cir. 1988) (internal quotation omitted)). Under the DOL regulations implementing the FLSA, "management" generally includes activities such as:

> [I]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

A "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining the primary duty of an employee include: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee.[1] Id. "This analysis specifically requires an

---
[1] The Court notes that the record is unclear regarding what the hourly rate paid to employees performing non-exempt tasks similar to Plaintiff's was.

7

examination beyond an employee's title to the specific duties performed by the employee." Barreto v. Davie Marketplace, LLC, 331 F. App'x. 672, 674 (11th Cir. 2009).

The Eleventh Circuit analyzed the "primary duty" issue in three recent cases and found that the question of whether the employee is exempt is one for the jury where there is evidence establishing the following: (1) a store manager spends 80 to 90 percent of her time performing nonexempt, manual labor and only 10 to 20 percent of her time performing managerial work; (2) she is expected to perform a significant amount of manual labor unrelated to management; (3) she rarely exercises discretion due to company guidelines; and (4) she has little freedom due to oversight from area and district managers. See Morgan, 551 F.3d at 1233; Rodriguez, 518 F.3d at 1259; Barreto, 331 F. App'x. at 672.

The facts in this case are similar to that in the above-cited cases. First, Plaintiff's sworn testimony indicates that she spent 95 percent of her time performing non-managerial tasks and 5 percent performing managerial tasks. Dkt. No. 30-2 ¶ 3. Defendant has not disputed this in its motion.

---

Therefore, the Court has no clear basis of comparison to Plaintiff's salary. Nonetheless, sufficient evidence in the record exists for the Court to rule on this motion using the other factors. Furthermore, at the least, there is a question of fact regarding what Plaintiff's salary was in comparison to non-exempt workers performing similar work.

Second, Plaintiff testifies that she performed duties very similar to those of other, non-exempt employees. Id. ¶ 5. She testifies that this was essentially mandatory because she did not have the necessary non-exempt employees to accomplish the needs of the store. Id. Further, Plaintiff was previously an hourly employee for Defendant and asserts that there "was not a lot more responsibilities" after her promotion to manager. Id. 37:16-19.

Third, there is evidence that Plaintiff had little discretion in the managerial tasks she performed due to company guidelines. For example, tasks such as training for new hires (Dkt. No. 26-1 29:9-14), store operation (id. 75:2-5), merchandise display (id. 91:13-15), and setting up the stores for the holiday season (id. 156:4-6) were all subject to company guidelines.

Fourth, many decisions were subject to approval and deliberation by a supervising District Manager and/or Regional Manager. Dkt. No. 63:19-25, 64:1-25, 39:7-25. Specifically, Plaintiff needed an area or district manager's approval for hiring (id. 39:7-25), disciplining employees (id. 41:19-25), terminating employees (id. 57:7-25), promoting current employees (id. at 51:15-19), and dealing with store theft (id. 43:13-19). Furthermore, evidence in the record exists that Plaintiff's district manager advised her regarding dealing with workplace

AO 72A
(Rev. 8/82)

harassment (id. 47:1-6), what to look for in new hires (id. 48:15-17), setting up new stores (id. 78:18-25), store performance (id. 79:18-20), store décor (id. 93:10-14), store events (id. 106:9-15), and merchandise placement (id. 109:22-25). In addition, facts in the record exist establishing that some of Plaintiff's managerial tasks were supplemented by hourly employees who were "control[led]" by Plaintiff's district manager. Id. 50:1-25.

Defendant responds to Plaintiff's testimony by pointing to the multitude of managerial tasks that Plaintiff had the power to perform. Dkt. No. 32 p. 3-5. Furthermore, Defendant argues that the tasks most important to the employer govern whether Plaintiff is exempt. Id. Finally, Defendant argues that even if a substantial amount of time was spent on non-managerial tasks, Plaintiff was still at all times "supervising" non-exempt employees. Such arguments do not justify summary judgment for multiple reasons.

First, the analysis should focus not on the types of tasks Plaintiff *could have* performed, but those she actually *did* perform. See Morgan, 551 F.3d at 1233; Rodriguez, 518 F.3d at 1259; Barreto, 331 F. App'x. at 672. The record is undisputed that Plaintiff was at least nominally given many managerial duties. However, a material fact exists regarding just how often and for how long Plaintiff actually performed these tasks.

Second, the Court declines to hold that employers may forego paying their employees overtime simply because the employer finds an employee's managerial tasks more important. The Eleventh Circuit has previously rejected the argument that evidence of rarely performed managerial tasks is dispositive regarding an employee's primary duty. Barreto, 331 F. App'x at 675-76. Instead, these responsibilities are considered "nominally given" and are not dispositive in determining a primary duty. Id.

Finally, whether Plaintiff conducted managerial duties concurrently with non-managerial duties is a question for the jury. See Morgan, 551 F.3d at 1272-73; Chin Hui Hood v. JeJe Enters., Inc., No. 1:14-CV-2405, 2016 WL 4769737, at *12 (N.D. Ga. Sept. 12, 2016). The record reveals a fact question regarding whether Plaintiff was even able to manage her stores at all, as there is a question whether she was present for 242 days during the three years she worked for Defendant. Id. ¶ 10. The Court recognizes that Defendant disputes the accuracy of Plaintiff's testimony on this point and has presented opposing evidence to counter it. However, this is a question of fact which cannot be resolved on a motion for summary judgment.

Furthermore, regardless of how much time Plaintiff spent away from her primary stores, a question of fact still exists regarding whether Plaintiff was a manager during the times when

11

she performed non-managerial tasks. Plaintiff describes a multitude of non-exempt tasks performed for 95 percent of the time she worked for Defendant. There is a genuine issue of fact regarding whether these tasks could be performed concurrently, considering the extent and variety of the non-exempt tasks performed.

The record does not reflect that Plaintiff is "plainly and unmistakably" exempt from the FLSA under the executive exemption. Morgan, 551 F.3d at 1269. In addition, a question of fact exists under the administrative exemption. 29 C.F.R. § 541.200(2).[2] Thus, summary judgment must be denied as to the FLSA claim.

## II. Plaintiff's Breach of Contract Claim

Plaintiff also alleges a state law breach of contract for overtime, unused vacation time, and sick leave stemming from her termination by Defendant. Dkt. No. 1. Recovery for a breach of contract under Georgia law requires showing the elements of (1) the breach and (2) damages caused due to the breach. Kimball v. Better Bus. Bureau of W. Fla., 613 F. App'x 821, 824 (11th Cir. 2015) (relying on Georgia law). Of course, a contract must exist to have a breach thereof. Plaintiff's breach of contract claim in this case must fail. Plaintiff concedes that she has

---

[2] The administrative exemption also requires the Plaintiff's primary duty to be management for the exemption to apply.

AO 72A
(Rev. 8/82)

no written contract with Defendant. Dkt. No. 26-1:5-10. Therefore, Plaintiff must rely on a theory of implied contract.

In order for an implied contract to exist the evidence must plainly show that the surrounding circumstances indicate an intention to contract between the parties. See Hobby v. Smith, 550 S.E.2d 718, 719 (Ga. Ct. App. 2001). However, the circumstances do not indicate that a contract exists here. Plaintiff has provided no evidence that any such implied agreement between the parties existed or that Defendant typically enters into such an agreement with other employees. Essentially, the Plaintiff petitions the Court to rule on what her rights would be under a hypothetical contract in circumstances that would ordinarily not be governed by any agreement. This cannot be done. Thus, the Court grants summary judgment regarding Plaintiff's breach of contract claim.

## CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant Beall's Outlet Stores, Inc.'s Motion for Summary Judgment (Dkt. No. 26) is **GRANTED IN PART AND DENIED IN PART**.

SO ORDERED, this 13th day of January, 2017.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA